May it please the Court. Good morning, Your Honors. My name is Scott Hennig. I represent Picerne Construction Corporation, who is the appellant in this matter. I would like to address three points for the Court, and if I manage my time correctly, reserve three minutes for rebuttal, with the Court's permission. Your Honor, first of all, this Court issued an opinion after the briefing was submitted in a case called Gillespie, which we attempted to bring to the Court's opinion as soon as I found out about it. That was the bankruptcy appellate panel, not the Ninth Circuit. There was an opinion that we believe needs to be brought to the Court's attention because it deals with a lot of the issues that caused the error in this case. So that's the first point that I'd like to address. The second point is that the rule in the Ybarra case, Y-B-A-R-R-A, should be applicable to both plaintiffs and defendants, contrary to what the lower court, the bankruptcy court, believed in this situation. And third, I'd like to clarify and point the Court to portions of the record that deal with the argument that there has been a release between the parties of the attorney's fees, which has not happened. First of all, Your Honor, this case deals with a construction case. Counsel, before you do that, can you tell us the status of the… is there an appeal pending in the State Court? Yes, Your Honor. And is it still pending? Yes, Your Honor. Okay. Now, if you were to… that would be Casalino-Villas appeal, is that correct? Correct. And if they were to prevail on appeal, that would move this? That's an interesting question. I want to try to make sure I'm answering it completely. I haven't thought about that. It may very well move it. I could see scenarios where portions of the claim for attorney's fees might be independent of the appeal. Presumably, if they won completely so that they didn't owe anything to the certain construction, so you lost everything on your mechanics lien, then you wouldn't get attorney's fees. If there was something in between, then probably it would still be here. I follow the logic, Your Honor, and I understand what you're saying. Okay. So this is a case where it was a construction project. Our client built two apartment complexes up in Elk Grove. They were not paid. There was an arbitration that resulted in an award. The single-purpose entities, both commonly owned, were put into bankruptcy, Chapter 11 bankruptcy. There was a reorganization plan that was entered, and then the parties returned to the fray. In particular, the reorganized debtor agreed to and went back to court in the state court to litigate the mechanics lien. Wasn't that a term of the confirmation? So as I read the sequence of events, there was an original plan that was submitted to the bankruptcy court for determination, and then you, Pizerne, and Casalino entered into a settlement agreement, and that settlement agreement was incorporated by reference in the plan, and so it looked like, as a condition of confirmation, that there was agreement between the parties to litigate the mechanics lien issue to completion, and that was incorporated in the plan. Am I misreading the record here? I don't believe so, Your Honor. That's accurate. One nuance is that there were two bankruptcies. Well, the Campbell bankruptcy is not before us, correct? We're only looking at the Casalino bankruptcy. Only to the extent that the settlement agreement also touches on the Campbell bankruptcy. The settlement agreement was incorporated in the plan of reorganization, and there was an agreement in the settlement agreement to go back to the state court to litigate. So the parties had agreed to complete the state court litigation on the mechanics lien, and that seemed to me to distinguish it from the other cases, like Ibarra, where we said, if the debtor was entitled to a fresh start and then voluntarily went ahead and started litigating again, that was returning to the fray. And I was trying to understand why, if the parties agreed for litigation as a part of the plan, that fell into that exception to the general rule. Maybe you could explain that. Well, Your Honor, that fact that you are highlighting is something that works actually in Passeron's favor for his argument, because the settlement agreement is actually evidence of the parties' intent to return to the fray. It shows everyone that that is exactly what the reorganized debtor was trying to do. So there was agreement to litigate that mechanics lien issue, correct? That's right. But that wasn't the case in any of the other ones, like Ibarra or Siegel, I think was the other one that you cited, where there wasn't that sort of agreement as part of the plan. That's correct. Was there any other case where there was agreement to complete litigation as part of a confirmed plan? I don't believe so, Your Honor. I believe this is the only one where there is that kind of an explicit agreement to return to the fray. So could the plan have been confirmed without completion of the litigation? Because the first version of the plan I saw contemplated that there were two scenarios, one if Passeron won and one if Passeron lost. But was there any plan that could be confirmed without this litigation issue being resolved? Not over Passeron's objection to the plan. They would have had to, they referred to it as a cram down, they would have had to persuade the court to enforce a plan of reorganization over Passeron's objection. So it seemed like the policy issue that was of concern in Ibarra and our other cases, which is the debtor was entitled to a fresh start, but nevertheless voluntarily continued or commenced litigation. It just didn't seem to be an issue here, and I was wondering if you could respond to that. Well, I would disagree that it was not an issue here, because the policy concern, the overarching policy concern with Ibarra, is you don't want to create a situation where a reorganized debtor can go back, return to the fray, litigate with impunity, which they did here for 18 months. They did not take opportunities to settle the case. They demanded their own attorney's fees. But wasn't that contemplated by, I guess I'm coming back to the plan. I mean it was contemplated by the plan that this issue would be litigated to completion.  It was contemplated by the plan. And since it was contemplated by the plan, and they did exactly what was contemplated by the plan, why is that something that was in derogation of the fresh start provided by bankruptcy? Well, the fact that consistent with the plan there was an agreement to return to the fray does not change the attorney's fee liability analysis. Why is that? Because, number one, there is a contract that was still in existence between the parties that said the prevailing party would get attorney's fees. Number two, the settlement agreement defined what claims were going to be waived and released, and it did not say that future attorney's fees would be waived and released. Number three, the interpretation of that settlement agreement, the best evidence for the interpretation of that settlement agreement is the debtor's own actions, their performance on the settlement agreement, how they're carrying it out. They demanded their attorney's fees, not once but twice, and not in a perfunctory way that there's a case where there was an answer that was put in at the very beginning before the bankruptcy and there wasn't a withdrawal of the attorney's fees request. Here, a year after the bankruptcy and on the eve of trial, there was an answer that was filed with a demand for attorney's fees. Then after the trial, there was a brief that was submitted that asked for attorney's fees with specific reference to the provision in the contract, 14.6.2. And this is the debtors who are coming back asking for their attorney's fees. Were they entitled to attorney's fees had they won? Because I guess the state court said this is beyond our purview. We were just asked to litigate the mechanics lien. Would they have been entitled to it? Two parts to that. The first answer is yes, they would have been entitled to that had they won. And second of all, I think I'd like to recharacterize what the state court did, what Judge Judy Holzer-Hirscher did. The other side had argued that after they had demanded their attorney's fees that the bankruptcy somehow prevented any kind of allocation of an award of attorney's fees. In my experience, any time a trial court at a state court level hears the word bankruptcy, they're aware of the automatic stay, they become hands off, and the judge really essentially said, well, you need to get some clarification from the bankruptcy court, which was why we went back to Judge Robles and presented these issues. So the argument you just made before I interrupted you seemed to go to the question of whether the contractual rights to attorney's fees, which was in the original contract between Pizerne and Casolino, was discharged in bankruptcy or not, whether it was a contingent unliquidated claim. And Gillespie, which is like the bankruptcy appellate panel, says, the general rule is that these sorts of claims are discharged in bankruptcy and then the exception is this return to the fray. So do you want to explain why you think, unlike what was the case, SNAP, which indicated that these sorts of attorney's fees that arise from a prepetition contract are discharged because they're unliquidated claims. Why isn't that applicable here? Yes, I very much do want to try to address that. First of all, just in terms of organizing my argument, the discussion that we've been having has really related to the third point that I wanted to address. The first point, what was at issue before the court in this bankruptcy was whether the fees that were incurred post-bankruptcy, whether the fees that the debtor caused Pizerne to incur post-bankruptcy should be considered a prepetition claim, even though they all happened after the bankruptcy, and therefore should be considered discharged by the bankruptcy injunction. So the question of when do we, for purposes of bankruptcy, consider the claim for these post-bankruptcy attorney's fees to have arisen was the central issue that was dealt with in Yevara. Where Judge Robles got confused was he said, well, these post-bankruptcy fees are really unliquidated contingent fees that we are going to deem to have existed beforehand. And we have cases saying that, though. I mean, SNTL says that. And so I was looking for an attorney fee case where we said, no, that's not the case other than the returning to the fray cases. Because returning to the fray cases, Gillespie makes clear, the returning to the fray cases are an exception to the general rule. And so you're just re-arguing that this falls within the exception. Is that right? I'm inclined to say yes, but I'm not categorizing the analysis in the same way that you are. Well, you're relying on Gillespie. That's what Gillespie said. Well, let me then try to clarify my comments. Gillespie does start out with what it believed the entire issue was. For purposes of the discharge injunction, when does an attorney's fees claim arise? When the fees are incurred or when the underlying claim arises. And then they say, they distinguish the SNTL case, as you're talking about, and they say that in the Ninth Circuit, there's a different standard for determining discharge for purposes of when an attorney's fee claim arises. They say, under that standard, even if the underlying claim arose pre-petition, which was our situation here, there's a claim on a mechanic claim, the claim for fees incurred post-petition on account of that underlying claim is deemed to have arisen post-petition if the debtor returned to the fray post-petition by voluntarily and affirmatively acting to commence or resume the litigation with the creditor. Okay, so that's back to the deemed to have arisen if the debtor returned to the fray. So we really are focusing only on whether this constitutes a return to the fray situation. Is that right? Yes, Your Honor. Okay, thank you. I believe that that is correct. Counsel, you're down to half a minute, and we've taken quite a bit of your time. We wouldn't allow you some time for rebuttal. I have a question I would like you to address, if you would, before you sit down. Yes, Your Honor. In the settlement agreement, and I'm going to refer you to pages in the settlement agreement, so I hope you have it in front of you. On page 11 and on page 14, there are references to attorney's fees. Now, can you tell me, first of all, whether those paragraphs have any relation to this situation? And even if they don't, what are we to make of the fact that the settlement agreement specifically addressed issues of attorney's fees for some issues but not for others? So I'm on page 11 of the settlement agreement. I'm looking at ER 157 in the excerpts of record. And then it also appears on page 14, which would be ER 160. The answer to your question, Your Honor, is no, those provisions don't bear on the attorney's fees issue that we have here. The section that you would be looking at is on page 15, ER 161, which deals with the release. The important takeaway from that, Your Honor, is that there is nothing in that release that says the parties will release their attorney's fees for future litigation. So the paragraph that I am looking at on page 11 is paragraph 7, sub 3i. And this is discussing the discern mechanics lien. Is that the lien that's at issue in your case? It is, Your Honor. Okay, so I'm over on page 11. That is a continuation of that paragraph. So this is still dealing with the mechanics lien. And there's some discussion here about three-quarters of the way down. It says, This may be a collection provision, I think. So that would be unliquidated contingent, right? I mean, the settlement agreement incorporated by the bankruptcy plan seems to contemplate that there might be some additional litigation in which your client would be entitled to legal fees. Is that correct? It deals with a different scenario. It deals with what happens if the debtor does not Refuse to come forward. It's a collection matter. That's correct. So it's even subsequent to what you're engaged in. That's right. So the fact that the settlement agreement contemplated attorney's fees in something that it would be post the litigation that you're involved in, does that tell us anything about what the parties contemplated about attorney's fees in your action? No, Your Honor. Only to the extent that the section that you are citing deals with an entirely different scenario. The scenario that we are dealing with is governed by page 15. Page 15 deals with the Campbell settlement. Pardon? Paragraph 10. That's right. It deals with I thought the Campbell was not at issue here. No, no, no. See, this is where the settlement agreement becomes a bit confusing because they had two bankruptcies. As part of the settlement agreement, Campbell Corners paid money to Pucern for its work on that particular property. And then also Pucern and Castellino Villas agreed to waive certain claims and then pursue other claims going forward. What I want to draw the court's attention to is that the waiver is limited to claims that exist as of the date of this agreement or any time prior thereto. And that's where Judge Robles got confused by the Ybarra line of cases because if you look at his opinion, he says, Pucern argues that attorneys' fees and costs are not covered by the release because they did not exist as of the date of the settlement agreement. And then he goes right into the Ybarra analysis and misapplies it. The right application of the Ybarra analysis is what Gillespie said, which is what we had argued before Gillespie came out, which is that it doesn't matter if you're a plaintiff or a defendant when you return to the fray. It's the litigation conduct. It's the indicia of a voluntary action as distinguished from a case like Taggart, where in Taggart they tried to make the argument that simply because someone had not withdrawn an answer that had been filed years before that had an attorney's fees request in it, that that constituted a voluntary action. So like inaction was a voluntary action. No, for Ybarra, it is clear here. There was a return to the fray. They agreed to it. Well, I think we're familiar with Ybarra. I think you've answered my question. You're now about five minutes over your time, so I'm going to cut you off there. I will give you time for rebuttal. I appreciate that, Your Honor. Let me remove my headphones. If it pleases the Court, Your Honors, good morning. My name is Ron Bender. To my right is my partner, Beth Young. She may wish to take some of our time. We're of the law firm Levine, Neal Bender, You and Brill. We were counsel to the two underlying Chapter 11 debtors and were counsel here to the appellee. Your Honors, we believe these issues are extremely straightforward and are really not complicated. I think it might be more productive if I ask you if you have any specific areas or questions of me. Well, I have one question. Is there any issue here of ripeness, given the fact that the appeal is still pending in the underlying suit in the State Court? And can, along with that, depending upon your conduct in the underlying suit, can the facts change? In other words, if you won the appeal and came back and filed a counterclaim with that, I'm just concerned that there could be a... the facts and this... I mean, normally we don't hear cases where there's potential that it's going to be moved by something else to begin with, and then the second thing is your underlying conduct. Could it affect the outcome? That's a good question. We don't believe so, Your Honors. We think these issues are very clear. There was two bankruptcy cases. They were basically spiraling out of control. There was endless legal fees that were being incurred by both sides, and Mr. Hennig and I decided to make sort of a last-ditch effort as we were heading towards what was going to be a heavily contested plan. That was the first plan that you referred to to see if we could reach a settlement agreement. My memory is it took us months to reach the settlement agreement, and in the end, we were able to resolve all issues except for the one issue of what became defined as the senior PASERN secured claim, and the issue had to do with the lien priority of that claim as well as the amount of that claim, and we had a competing lien claimant of this bank that was involved. And so the agreement of the parties was very clear, which is there's going to be a full and complete release of all claims. It's the reverse of what counsel just said, and the only matter that's going to be decided is going to be the amount and priority of the senior PASERN secured claim, and it was specifically, of course, contemplated in the settlement agreement, which was then adopted into a reorganization plan that PASERN supported. That was part of the overall agreement, and so the entire concept of the settlement agreement was that that issue would then be decided in state court. It would have been no big deal if that had been what PASERN intended to have carved out an attorney's fees claim in the appeal. But of course that was... So what is the status of your appeal in the California Court of Appeal? My law firm is not handling that matter. It's my understanding that the law firm, Levy Small and Lawless, that is handling that matter, appealed the adverse ruling in the state court, but I don't know any more facts behind that. So we don't know when that's going to be heard? No. But if they were to... If your clients were to win that appeal and to win it outright, there wouldn't be a need for attorney's fees, right? That's correct, Your Honor, but we think that's a non-issue anyway because you had a double whammy here. You have a bankruptcy discharge outright, which Your Honor referred to before, and you have an outright clear and full release contained in the settlement agreement. So you have a double whammy here that makes it clear there was a release, and then you add to that the California Civil Code 3123, as well as the Abbott Electric case decided by this court, that make it clear that under the law, in the event of a mechanic lien claim, there is no interest component to it. I mean, there's no attorney's fees component to it. And so the attorney's fees component here, the breach of contract attorney's fees component, was released outright. There's not any question or ambiguity about it. Now, it is routine in bankruptcy for disputed claims to be... disputed pre-bankruptcy claims to be resolved after a plan has been confirmed. And the reason for that is because it typically wouldn't make sense for either the Chapter 11 debtor or the claimant to spend money litigating a disputed claim or to know whether to settle on either side a disputed claim until one knows how the claims are being treated under a plan. In other words, if a plan pays creditors 10 cents on the dollar, that changes the analysis of both sides versus a plan that, say, pays creditors 100 cents on the dollar. So it is routine, and this is something Judge Robles honed in on at the original hearing. It's routine in Chapter 11 where a Chapter 11 debtor confirms a reorganization plan, gets its discharge, and then does the claims objection process. I'd say that's the majority of time. And so it's just happenstance whether that claim litigation occurs before a plan is confirmed or after a plan is confirmed. Here, it easily could have been the case that this entire state court litigation occurred before the plan was confirmed. It was simply the agreement of the parties that they would go ahead and confirm the plan, stop the bankruptcy costs, have the bankruptcy debtors emerge from Chapter 11, begin making its payments to PERSERN, etc., and then have the litigation occur in state court. It was all part of an agreement of how to proceed. So it's completely distinguishable and completely unrelated to all of the cases that have been cited, including this new Gillespie case, which is designed, I think, clearly, to tell a Chapter 11 debtor, hey, if you go ahead and go through your bankruptcy case and you get your discharge of all pre-bankruptcy claims, the discharge language in 1141 of the Bankruptcy Code is incredibly broad, all claims. If you decide to start new litigation, go sue somebody unrelated to disputing a pre-bankruptcy claim, you have to know that there might be an attorney's fees risk to you. That has nothing to do with what occurred here. This is clearly a post-confirmation litigation of a pre-bankruptcy claim. The lawsuit had already been initiated. PERSERN asked for relief from state, saying that they think it should be continued in state court, and we believe it should have been litigated in bankruptcy court, but Judge Robles disagreed, and then as part of the settlement agreement, we all agreed that it would be litigated in state court. So every case that's been cited by PERSERN is completely distinguishable and frankly not relevant to the issues here.  that moots any claim for attorney's fees? It means that we don't even have to get to Ibotta, we don't have to get to Gillespie, because it's barred by the settlement agreement. So we're in the settlement agreement. Your Honor, it starts in paragraph 8 on page 14, where PERSERN is agreeing that pursuant to the Castellino plan, it will not receive any distribution from Castellino or retain any claim against Castellino or against any of the COPL released entities, which is a defined term, on account of any claim which is not determined by the state court to constitute a senior PERSERN secured claim. And then in paragraph 9, you have your standard full and complete broad release. Well, so right above paragraph 8, there's documents of dispute. Castellino contends that under no circumstances is PERSERN entitled to interest or attorney's fees or costs as part of the PERSERN secured claim and PERSERN disputes at contention. What is that? What was the intent of that documentation of the dispute? We're talking about a document that was entered into years ago, and so I can't speak to what PERSERN's mindset was, but you're talking about a contention by parties, but that doesn't override... Well, what does it refer to? Does it refer to the matter that's about to go to litigation? The one thing that was accepted from the settlement agreement, that is the secured claim? I can't tell you what PERSERN was disputing, but it doesn't change the fact that after that... No, but we have to know what the claim was. What claim did this refer to? Well, so PERSERN secured claim is defined as the mechanics lien claim. So I suppose there could have been a dispute over whether the mechanics lien claim included attorney's fees or not. I believe that... I'd have to go back and look, but I believe that the PERSERN secured claim is different than the senior PERSERN secured claim, and it was only the senior PERSERN secured claim, which is the mechanics lien claim, that was then litigated. I believe the PERSERN secured claim had to do with the underlying claim that whether it accrued interest or not is not relevant to this equation. If you look at recital D, that's where the PERSERN secured claim issue is. Recital D... Right. On page... On page 2. And so that's a computation, I believe, of the amount of the claim. But the claim is secured only because it's secured by the mechanics lien. Correct. So the question was whether the secured claim, so secured by the mechanics lien, included attorney's fees or not. And I guess your argument is that whatever attorney's fees wouldn't be secured by the mechanics lien as a matter of California law. And the court's own ruling in the Abbott case, in the Abbott Electric case. So I think you have a double issue here. But no court's ever ruled that in this case. Say that again? No court has ruled that the attorney's fees claim is barred by the California mechanics lien statute, right? In this case. The state court did not allow attorney's fees. The other firm handled it. I don't know what they based their ruling on, but the state court itself... You can't go to the bankruptcy court and get clearance from the bankruptcy court. That would be different than the state court saying under state law you can't recover attorney's fees. I think you're correct. So the state court seemed to think that the issue was not moved by state law. In other words, that the contract provided for attorney's fees, that that might be an exception to whatever California rules has with respect to mechanics liens. I can't tell you what the state court judgment... That's not our view of the law. I'm still trying to figure out what this paragraph on page 14, what this sentence about attorney's fees, because this does seem to refer to the PASERN secured claims, those that seem to be the claims at issue here, and this seems to acknowledge that there is a dispute regarding interest, attorney's fees, and costs that the parties have agreed not to agree on. I think it is distinguishable, Your Honors, from what then is... The way the senior PASERN secured claim is then defined on page 10 in paragraph 7, Little Roman at 3, and that's a different defined term, and that's the only claim that was retained by the settlement agreement, the release, and the plan... So the one that you went to state court to litigate was the senior PASERN secured claim. Correct. Everything else was clearly released by both the settlement agreement and the plan. Okay, and your contention is that the reference on attorney's fees to page 14 refers to the PASERN secured claim, which is different from a senior PASERN secured claim? Correct. These are two totally different, completely different defined terms with the one that isn't called senior simply relating to your standard breach of contract claim, which PASERN released. And to the extent it didn't release it, it assigned it to the bankruptcy suit. Okay, so all right. Now back to the question I asked Mr. Henning. So if paragraph little 3 on page 10 refers to the senior PASERN secured claim, what do we do with the language on page 11, which is part of the same paragraph that explains what happens in the event that Castellino loses and refuses to pay PASERN? PASERN seems to allow for a collection action and says PASERN shall be entitled to institute any and all remedies available at law and equity, including reasonable legal fees. Because these are completely unrelated issues. This has to do... there was an agreement made that the senior PASERN secured claim was going to be adjudicated in state court. And depending upon how it was adjudicated, there was a payment structure that was decided upon in advance under the plan of reorganization. This was specifically designed to penalize the reorganized debtor. If it failed to comply with an obligation, it contractually agreed it had owing. That is, if it loses in state court and it decides that it doesn't wish anyway to pay PASERN, then PASERN could come for a collection action and PASERN would be entitled to its legal fees in that collection action. Correct. That was contractually agreed to by the parties. So that's a post-discharge.  and be a post-discharge claim. Correct. It would be on account of a post-confirmation liquidated claim that's resulting, of course, originally from a pre-bankruptcy claim that the parties jointly agreed would be adjudicated by the state court. So this was, to me, this was standard. It would be routine in bankruptcy. Let's put it this way. So come back to the analogy of what happens regularly in bankruptcy. You would have a pre-bankruptcy claim that gets litigated, not with a settlement, I'm talking about in the standard world, that gets litigated post-confirmation and gets settled or adjudicated. Let's say it gets settled. And the settlement results in a payment stream owing by the reorganized debtor. It would be routine in that context for the parties to contractually agree that if the reorganized debtor then breaches on the terms of its settlement agreement, the creditor can come after the reorganized debtor for collection, cost of attorney's fees, etc., but would never have been able to get them. My question was, is there any inference to be drawn from that? If I were you, I might say, well, the fact that we accounted for attorney's fees in one case but not the other suggests that attorney's fees were not contemplated on the mechanics lien. They were only contemplated in a later action for which we expressly provided. We don't agree with that, Your Honor. We think it was very, very clear that the CERN basically had, if you want to lump them, two bundles of claims. They had a breach of contract claim. They had a mechanic lien claim. The mechanic lien claim, both under California law and with the Ninth Circuit ruling, is not entitled to attorney's fees. The parties agreed on a methodology, time, place, etc., on where the senior PCERN secured claim was going to be liquidated, and then the parties agreed contractually that if a ruling is made in favor of PCERN and the reorganized debtor breaches on its payment stream obligations, then PCERN will be entitled to pursue a collection action with attorney's fees, costs, etc. That's routine, but that has nothing to do with what PCERN consciously released. And of course, a broad and complete release, we don't agree that the parties didn't contemplate this, but let's assume, taking your hypothetical, a broad and complete release is specifically designed to include a release of all known unknown claims, including what the parties aren't contemplating. And that's the whole purpose under California of having your standard 1542 exclusion. So if you want to retain a claim in California, it's incumbent upon the claimant to specifically carve out from a broad release, not the other way around. So we don't agree with the sophistication of counsel present in court and who adjudicated this for years, that this wasn't contemplated. But if we want to give the benefit of the doubt that neither party thought of it, well, a broad and complete release should always weigh heavily in favor of the released party, not in favor of the releasing party. Your Honor, would you mind if my partner, just for 30 seconds? I've taken you two minutes over your time, but I allowed them an additional couple of minutes, so I will allow her to do it. Thank you. Thank you, Your Honors. I'd like to please report Beth Young on behalf of Castellino. I just wanted to point out, in response to Your Honor's question regarding whether the state court had adjudicated that there are no fees entitled to a mechanic's lien award, and in the state court judgment denying the attorney fees motion, the court indicated that it could not award attorney's fees because it exceeded the amount of the validity and priority of the senior secured posturing claim, and that if attorney fees were sought and were permissible, they'd have to go to the bankruptcy court for that clarification because they couldn't award it under what was defined as a senior secured posturing claim that the state court was asked to adjudicate. And so there was a determination, and the civil code provides no award of attorney's fees in a mechanic's lien claim. It's only to compensate posturing for actual value provided to the property, and so as a natural component of a mechanic's lien claim, by definition, you can't have attorney's fees. And so where the contract claim was expressly waived in the settlement agreement, there was no basis for an award of attorney's fees when you look only at the adjudication of the mechanic's lien. Then why did the state court even refer it back to the bankruptcy court? I suppose because, she said, the state court judge had said, look, I can't do it here. If you think you're entitled to it, go see the bankruptcy court. Perhaps the bankruptcy court will do it. So it wasn't part of the mechanic's lien claim, but there was a contract right lurking out there in the original contract for attorney's fees, even though that wasn't secure. That's what I understood the state court to be doing. Well, there are two components of the state court litigation. That's correct. Initially, pre-petition, before the bankruptcy, there was a breach of contract action and a motion to foreclose on a mechanic's lien. However, through the bankruptcy and through the settlement and through the plan of reorganization, that breach of contract claim was completely settled and released and done. And so any potential right to attorney's fees was settled in the settlement agreement. And so where there was no breach of contract claim that the state court was, at that point, going to adjudicate, there would be no basis for an award of fees. The only basis for any award by the state court would be exclusively the mechanic's lien claim, which by law does not include attorney's fees. And so Bousserne had expressly waived that in the settlement. So if we reverse the bankruptcy court here, the bankruptcy court is not going to say, okay, you got me, attorney's fees can be awarded and refer it back to the state court. Is that right? It's only the bankruptcy court at this point that can award attorney's fees? Well, I think that... The bankruptcy court cannot award attorney's fees. From what you've told me, I understood you to tell us that the state court doesn't think that it can award attorney's fees. It can't do so because it's barred by law to do so as a matter of compensation under a mechanic's lien. And as a matter of contractual rights, that would be completely exclusive to the bankruptcy court. And therefore, it's not just a matter of getting the bankruptcy court's permission, but it would actually have to be awarded by the bankruptcy court. If there was a basis to do it, but the bankruptcy court recognized the settlement eliminated any potential, everything was settled except the mechanic's lien. And so the fight in state court was simply to determine priority and amount. And under the settlement, if Bousserne was first, there was already an agreed amount. And if Bousserne was second, behind Bank of the West, the other lien claimant, then it would have that amount. And so there wasn't really anything for the state court to adjudicate relative to fees. A lot of the cases, and in particular the Abbott Electric, they had two components. And so the bankruptcy, the contract claim, would have potentially entitled Bousserne to attorney's fees as a prevailing party. However, it settled and released those. And it only retained the mechanic's lien claim, which by law doesn't allow attorney's fees. So it's a moot point. And to the point of, will the appeal that is now pending moot this? I think the answer is no, because they're not entitled to attorney's fees under any scenario, win or lose. I mean, certainly if we prevail on the appeal pending now, that would remove any right to attorney's fees under the notion of prevailing party. But it's irrelevant because mechanic's lien claims don't entitle you to attorney's fees. So they pursued the only claim that had no right to legal fees at any point for any reason. And so it's just a moot point. And the returning to the fray doesn't change that analysis. Not only are the cases distinguishable, and I don't think Gillespie supports the argument that Bousserne has made, but there's no right to attorney's fees where there's no statutory, contractual, or existing legal right to recover them. And that's really the issue. Return to the fray or not. I think we understand your position. Thank you very much. Thank you. Thank you. If you'll put, Ms. Brown, if you'll put two minutes on, please. Your Honor, three brief points. First of all, my counterparts didn't have the benefit of trying the state court action. I did. If you look at the record, the record is pretty clear on what the state court judge did do. She did not say that as a matter of law, or California law, attorney's fees are not recoverable. Additionally, look at the Abbott case. Look at 358. It doesn't say what they want it to say. Attorney's fees are recoverable against the individual. It just can't be recovered out of the corpus of the liquidation. Are they secured by the mechanic's lien? No, Your Honor. It would have to be just as a matter of contract. In the state court, they would say this is the amount that's secured by the mechanic's lien, plus we're entitled to attorney's fees as a contract right under our contract. Is that right? Precisely. To make sure that everyone's on the same page, the attorney's fees at issue here are those fees that the reorganized debtor caused Pacerno to incur after their reorganization, not the attorney's fees that they caused Pacerno to incur beforehand. Second point, with regard to the timing of the claim, the Yabarra analysis and the scope of the release, those two things mirror each other because the release says that only those claims that exist are being released. That is the same analysis that Yabarra is doing. This is my concern. If everything but the Pacerno, the senior Pacerno secured claim is released, and the senior Pacerno secured claim is what was secured by the mechanic's lien, doesn't that eliminate the attorney's fees? As we've just discussed, the mechanic's lien didn't secure the attorney's fees. The answer is no, Your Honor, because the attorney's fees at issue did not exist at the time the release was entered into. We're back to whether those were in the fair contemplation of the parties and whether it's a pre-petition claim that can be discharged in bankruptcy. We are back to whether or not those fees existed at the time, and that analysis for purposes of the release is identical to the analysis for purposes of Yabarra. If you follow the court's opinion and Robles' opinion, that's exactly the way that he ran the analysis. And the last thing, Your Honor, common sense. This was a mutual release. Their intent at the time of the release is clearly reflected by them demanding not once, but twice, right before trial and after trial their own attorney's fees. I think that also goes to the issue of mootness, or ripeness, because I would hate to see first of all, I would hate to see us losing the State Court action, the appeal, but if we did they could certainly come back and claim their attorney's fees on this argument. So I think this does need to be decided. Thank you. Thank you for your time. Obviously a complicated matter. We appreciate the assistance of counsel on both sides.
judges: Melloy, Bybee, Ikuta